IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NGM Insurance Company f/k/a National Grange Mutual Insurance Company, | ) ) ) Civil No. 2:08-cv-3378-DCN ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) **ORDER AND OPINION** |
| Carolina's Power Wash & Painting, LLC, Norman L. Kuras, Jr. d/b/a Carolina's Power Wash & Painting, f/k/a Carolina's Painting & Pressure Washing, Cathy Cromer and Lisa Glover, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

This matter is before the court on cross-motions for summary judgment filed by plaintiff NGM Insurance Company (NGM), and defendants: (1) Carolina's Power Wash & Painting, LLC (CPWP); (2) Norman L. Kuras, Jr., d/b/a CPWP, formerly known as Carolina's Painting & Pressure Washing; (3) Cathy Cromer; and (4) Lisa Glover. Plaintiff NGM filed a declaratory judgment action against defendants CPWP, Kuras, Cromer and Glover, seeking a determination of coverage under a contractor's insurance policy. Defendants CPWP and Kuras seek indemnification from NGM against negligence claims brought by Cromer and Glover in an underlying lawsuit, Cromer v. Carolina's Power Wash & Painting, LLC, 06-CP-10-0855, filed in Charleston County. This is a question of first impression in South Carolina. For the reasons set forth below, the court denies plaintiff's motion for summary judgment and grants defendants' motions for summary judgment.

1

## I. BACKGROUND

The parties submitted a joint stipulation of facts for use in the cross-motions for summary judgment. For the purpose of establishing diversity jurisdiction under 28 U.S.C. §1332, the parties agree that NGM is a company incorporated, and with its principal place of business, in Florida. All defendants are residents of South Carolina.

NGM issued a contractor's insurance policy, Policy Number MPI29653, to defendant Norman Kuras, Jr., d/b/a CPWP, on or about March 13, 2001. The policy was effective through March 13, 2002, and the policy was renewed annually until the period of March 13, 2003, to March 13, 2004. The contractor's policy was in effect at the time of the underlying claims; the parties do not dispute this issue.

The contractor's policy provides the following coverage:

**A.  Coverages**

    **1.  Business Liability**

        a.  We will pay those sums that the insured becomes legally obligated to pay as a result of "bodily injury", ["]property damage", "personal injury", or "advertising injury" to which this insurance applies.

Stipulation of Facts ¶ 8. The policy then states the following pollution exclusion:

**B.  Exclusions**

    **1.  Applicable to Business Liability Coverage**

    This insurance does not apply to:

        **f.  Pollution**

            (1)  "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened

> > discharge, dispersal, seepage, migration, release or escape of pollutants:
>
> > (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:
>
> > > (I) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.
>
> > *****
>
> > Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

Stipulation of Facts ¶ 9.

On March 2, 2006, Cromer and Glover filed suit against CPWP and Norman Kuras, Jr., d/b/a CPWP, formerly known as Carolina's Painting and Pressure Washing, in Charleston County, alleging they were injured as a result of CPWP's negligence. Cromer and Glover were employed by the United States Postal Service (USPS) at the Johns Island Main Post Office, 2860 Maybank Highway, Johns Island, South Carolina 29455. The USPS hired CPWP to paint the interior and exterior of the post office beginning on or about April 30, 2003. The USPS also required CPWP to provide proof of current liability insurance. CPWP

> purchased and brought all paints, primers, solvents, and other job materials to the subject property for use in painting operations. The paints, primers,

and solvents used were paints, primers, and solvents used for normal interior applications and were purchased from Benjamin Moore Paint Company.

Stipulation of Facts ¶ 13.

Cromer and Glover were present at the post office while CPWP painted the interior of the post office. Cromer and Glover allege that they were exposed to "paint fumes, vapor, dust[1], and or other residue from the painting operations," and as a result, "they suffered permanent, serious, and irreparable personal injuries." Stipulation of Facts ¶ 15-16.

Plaintiff NGM argues that the contractor's policy pollution exclusion–what NGM refers to as an "absolute pollution exclusion"–"unambiguously excludes coverage for a variety of pollutants and irritants, including paint fumes and other fumes arising from painting operations." Pl.'s Mot. Summ. J. 2. NGM argues that even though South Carolina courts have not ruled on this issue, courts across the country, including the United States Court of Appeals for the Fourth Circuit, have upheld such exclusions in favor of insurers. As a result, NGM states that no genuine issue of material fact exists, and NGM is entitled to summary judgment. NGM asserts that the South Carolina courts have infrequently considered the effect of qualified pollution exclusions[2], and the South Carolina courts have never addressed the effect of an "absolute pollution exclusion." By

---

[1] During the hearing on cross-motions for summary judgment, counsel for NGM grudgingly acknowledged that dust not brought onto the premises by CPWP would probably be covered by the CGL policy at issue.

[2] See, e.g., Helena Chem. Co. v. Allianz Underwriters Ins. Co., 594 S.E.2d 455 (S.C. 2004); Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc., 588 S.E.2d 112 (S.C. 2003); Greenville Co. v. Insurance Reserve Fund, 443 S.E.2d 552 (S.C. 1994); Harleyville Mut. Ins. Co. v. R.W. Harp and Sons, Inc., 409 S.E.2d 418 (S.C. Ct. App. 1991).

applying the language of the "absolute pollution exclusion," NGM claims there is no coverage because the alleged injuries were: (1) caused by the release of pollutants (paint fumes); (2) at the place where CPWP performed its operations; (3) CPWP brought the paint to the job site; and (4) "the pollutants fall within the plain and ordinary meaning of 'any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Pl.'s Mem. Supp. Summ. J. 9-10.

CPWP and Kuras admit that "[t]he application of the 'Absolute/Total' Pollution Exclusion to a claim of personal injuries arising out of exposure to paint fumes appears to be a case of first impression in South Carolina." Def. Kuras's Mem. Supp. Summ. J. 7. CPWP and Kuras also acknowledge that courts, including the U.S. Court of Appeals for the Fourth Circuit, "have found the absolute/total exclusion to be unambiguous and have applied it broadly to bar coverage under circumstances not involving traditional environmental pollutants and even where the offending substance is confined to the indoors." Def. Kuras's Mem. Supp. Summ. J. 9 (internal citations omitted). However, CPWP and Kuras argue that other courts[3] have refused to abide by the "absolute pollution

---

[3] See, e.g., Nautilus Ins. Co. v. Jabar, 188 F.3d 27, 30-31 (1st Cir. 1999) (concluding under Maine law that pollution exclusion was ambiguous and its scope limited to "only those hazards traditionally associated with environmental pollution"); Meridian Mut. Ins. Co. v. Kellman, 197 F.3d 1178, 1184 (6th Cir. 1999) (holding that "the total pollution exclusion clause . . . does not shield the insurer from liability for injuries caused by toxic substances that are still confined within the general area of their intended use"); Belt Painting Corp. v. TIG Ins. Co., 795 N.E.2d 15, 20 (N.Y. 2003) (holding that "[r]easonable minds can disagree" as to whether an "absolute pollution exclusion" bars coverage for injuries resulting from exposure to paint or solvent fumes); W. Am. Ins. Co. v. Tufco Flooring E., Inc., 409 S.E.2d 692, 699-700 (N.C. Ct. App. 1991) (holding that a "discharge into the environment" is required for the pollution exclusion to apply, and the exclusion is limited to "pervasive environmental pollution problems").

exclusion" outside the realm of "traditional environmental pollution." Def. Kuras's Mem. Supp. Summ. J. 8. CPWP and Kuras argue that a number of courts have found "absolute pollution exclusions" ambiguous "because terms such as 'dispersal,' 'discharge,' 'irritant' or 'contaminant' are terms of art specific to environmental law." Def. Kuras's Mem. Supp. Summ. J. 7-8. CPWP and Kuras argue that the split of court opinions indicates ambiguity in "absolute pollution exclusions," and thus, the ambiguity should be read in favor of coverage.

Defendants Cromer and Glover echo the argument made by CPWP and Kuras, stating that the "absolute pollution exclusion" applies to traditional environmental pollution and not injuries which are alleged to result from paint fumes at a work site. Cromer and Glover cite a significant number of federal appellate cases and state cases, including most of the cases cited by CPWP and Kuras, to support this argument. Cromer and Glover also draw a close parallel between the instant case and Belt Painting Corp. v. TIG Ins. Co., 795 N.E.2d 15 (N.Y. 2003). In Belt, the New York Court of Appeals held that the pollution exclusion clause at issue did not unambiguously exclude "coverage for injuries caused by inhalation of paint or solvent fumes in an office the insured was painting." 795 N.E.2d at 20. As a second argument, Cromer and Glover cite Isle of Palms Pest Control v. Monticello Ins. Co., 459 S.E.2d 318 (S.C. Ct. App. 1995), asserting that the "absolute pollution exclusion" creates an internal consistency in the NGM policy. As a result, "[t]he internal inconsistency created by an exclusion which purports to bar coverage for claims arising out of the very operation sought to be insured renders the policy ambiguous, and we must resolve that ambiguity in favor of coverage." Isle of

Palms, 459 S.E.2d at 321.  Cromer and Glover argue that if painting equates to a "discharge" of a "pollutant" and is not covered, "the very risk sought to be insured would always be subject to the exclusion." Def. Cromer's Mem. Supp. Summ. J. 14-15 (internal citation omitted).

Cromer and Glover lastly argue that their injuries were proximately caused by the negligence of the insured and not as a result of environmental pollution. Therefore, Cromer and Glover state that the pollution exclusion is not applicable.

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.  Evidence should be viewed in the light most favorable to the nonmoving party and all inferences drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, a mere "scintilla" of evidence will not preclude summary judgment. Id. at 252.

## III. DISCUSSION

The issue before the court is whether the "absolute pollution exclusion" in the NGM contractor's policy, issued to a painting contractor, excludes coverage for negligence claims based on the release of paint fumes during ordinary painting operations. The effect of "absolute pollution exclusions" has not been considered by the courts in South Carolina; however, in Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc., United States District Judge Joseph Anderson, Jr., certified this question, among others, to the Supreme Court of South Carolina. 588 S.E.2d 112, 115 (S.C. 2003). The policies at issue in the case included a pollution exclusion identical to the exclusion now before the court. Id. at 114. Judge Anderson certified four questions, the last of which was: "Does the pollution exclusion preclude coverage?" Id. at 115. Unfortunately, the South Carolina Supreme Court did not reach this question; the court decided the case by invoking the economic loss rule in response to the first question certified by Judge Anderson.

It is clear that a nationwide split of opinion exists regarding: (1) whether "absolute pollution exclusions" bar coverage for incidents outside of traditional environmental pollution (e.g., contamination of groundwater over a long period of time), and (2) whether "absolute pollution exclusions" are unambiguous. One commentator determined that "about half of the cases nationwide to consider [the first issue]–and 17 of 23 state supreme courts–have found that 'absolute' and 'total' pollution exclusions do not bar coverage for claims outside of the context of traditional industrial pollution." John M. Ellison, Recent Developments in the Law Regarding the "Absolute" and "Total"

Pollution Exclusions, the "Sudden and Accidental" Pollution Exclusion and Treatment of the "Occurrence" Definition, SN050 ALI-ABA 1 (2008).

NGM cites two Fourth Circuit cases, cases from other circuits[4], and a wide variety of state court opinions[5] (outside of South Carolina) to support the argument that "absolute pollution exclusions" clearly and unambiguously exclude coverage for damages caused by the release of fumes or vapors." Pl.'s Mem. Supp. Summ. J. 10-11 (internal citation omitted). In Nat'l Elec. Mfrs. Assoc. v. Gulf Underwriters Ins. Co., welders were injured by fumes released from manganese welding rods, and their respective trade association sought coverage from its insurer. 162 F.3d 821, 823 (4th Cir. 1998). The court applied District of Columbia law and held that an "absolute pollution exclusion"–one somewhat similar to the exclusion before the court, now–should be enforced because the policy was "plain and unambiguous." Id. at. 825-26. In Assicurazioni Generali S.p.A. v. Neil, hotel guests alleged injuries resulting from carbon monoxide poisoning. 160 F.3d 997, 999

---

[4]See Technical Coating Applicators, Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 846 (11th Cir. 1998) (holding that "policies issued . . . unambiguously excluded coverage for bodily injuries sustained by breathing vapors emitted from . . . roofing products, regardless of whether TCA used the products properly or negligently"); Am. States Ins. Co. v. Nethery, 79 F.3d 473, 475-76 (5th Cir. 1996) (holding that paint and glue fumes were pollutants and were properly not covered under the clear and unambiguous "absolute pollution exclusion");

[5]See, e.g., Whitier Props., Inc. v. Alaska Nat'l Ins. Co., 185 P.3d 84, 94 (Alaska 2008) (holding that pollution exclusion unambiguously excluded leaked gasoline from coverage); Deni Assocs. of Florida, Inc. v. State Farm, 711 So.2d 1135 (Fla. 1998) (holding that injuries resulting from chemical fumes related to an ammonia spill were excluded under the "unambiguous language of the pollution exclusion clause"); Heringer v. Am. Family Mut. Ins. Co., 140 S.W.3d 100, 106 (Mo. Ct. App. 2004) (holding that lead paint exposure was properly excluded by the "explicit language" of the pollution exclusion).

(4th Cir. 1998). The court applied Maryland state law and held that an "absolute pollution exclusion" was "unambiguous" and barred coverage. Id. at 1006.

Of the two Fourth Circuit cases cited by NGM, Assicurazioni is distinguishable from the case at hand because the pollution exclusion language is different from the pollution exclusion included in NGM's policy and is patently more sweeping in its scope, stating that the policy does not cover "[t]he contamination of any environment by pollutants that are introduced at *any* time, *anywhere*, in *any* way." Assicurazioni, 160 F.3d at 999 (emphasis added). The policy further states that it does not apply to "*[a]ny* bodily injury, personal injury, property damage, costs or other loss or damage arising out of such contamination . . .; or © Payment for the investigation or defense of *any* loss, injury or damage . . . related to any of the above." Id. (emphasis added). The pollution exclusion in National Electrical is also distinguishable from the exclusion in NGM's policy. Overall, the wording of the exclusion is similar to that of the NGM policy; however, in National Electrical, the exclusion also contained the statement: "This exclusion is effective whether or not the pollution was sudden, accidental, gradual, intended, expected or preventable or whether or not any of [the insured] caused or contributed to the pollution." Nat'l Elec., 162 F.3d at 824. Once again, this exclusion clause appears to be more unambiguously sweeping in its treatment of pollution exclusions than the exclusion in NGM's policy. It is also worth noting again that the Fourth Circuit cases above apply the law of Maryland and the District of Columbia,

respectively.⁶

Under South Carolina law, "'[i]nsurance policies are subject to the general rules of contract construction.'" USAA Property and Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 797 (S.C. 2008) (quoting B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999)). "'Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary and popular meaning.'" Id. (quoting Sloan Constr. Co. v. Central Nat'l Ins. Co. of Omaha, 236 S.E.2d 818, 819 (S.C. 1977)). "'When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used.'" Id. (quoting B.L.G. Enters., Inc., 514 S.E.2d at 330). "'Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.'" Id. (quoting Diamond State Ins. Co. v. Homestead Indus., Inc., 456 S.E.2d 912, 915 (1995)). "Where language used in an insurance contract is ambiguous, *or where it is capable of two reasonable interpretations*, that construction which is most favorable to the insured will be adopted." Edens v. South Carolina Farm Bureau Mut. Ins. Co.: 308 S.E.2d 670, 671 (S.C. 1983) (emphasis added).

While the Isle of Palms case may initially appear to support a finding of ambiguity in the NGM pollution exclusion, the broad scope of the *professional liability exclusion* in Isle of Palms prevented coverage for the very purpose that the contractor sought a

---

⁶South Carolina Code Annotated § 38-61-10 (1976) states:

> All contracts of insurance on property, lives, or interest in this State are considered to be made in the State and all contracts of insurance the applications for which are taken within the State are consider to have been made within this State and are subject to the laws of this State.

11

commercial general liability policy. In the case before the court, the NGM policy provides liability coverage for negligent acts of the contractor's employees (e.g., dropping a paint bucket on someone's head); however, it excludes coverage for acts involving *pollution*. Due to the type of exclusion involved, it does not appear that the pollution exclusion clearly creates an internal inconsistency in the NGM policy. It is arguable that the painting contractor reasonably expected to be covered for any and all injuries arising out of his or his employee's negligence; however, South Carolina does not follow the doctrine of reasonable expectations[7], and the policy at issue still provides liability coverage for other negligent acts of the contractor and his employees.

Defendants CPWP and Kuras cite Fowler v. Canal Ins. Co., 389 S.E.2d 301, 303 (S.C. Ct. App. 1990), and argue that the split of court opinions regarding "absolute pollution exclusions" indicates that ambiguity exists. NGM counters that the proposition in Fowler is merely dicta, supported by "foreign authority." The court agrees that the split of opinions provides only an indication of ambiguity, not a conclusive determination.

The Belt case, in New York, followed a line of reasoning similar to the holding in the Edens case above. That case involved an individual alleging injury as a result of inhaling paint or solvent fumes while a painting contractor painted the inside of an office building. Belt Painting Corp. v. TIG Ins. Co., 795 N.E.2d 15, 16 (N.Y. 2003). The insurance policy at issue contained an "absolute pollution exclusion" almost identical to the exclusion in the NGM policy. Id. The court held that "[r]easonable minds can

---

[7]See Allstate Ins. Co. v. Mangum, 383 S.E.2d 464, 466-67 (S.C. Ct. App. 1989).

disagree as to whether the exclusion applies . . ." Id. at 20.  The court reasoned:

> TIG understandably relies on the policy definition of "pollutants" as "any solid, liquid, gaseous, or thermal irritant or contaminant including * * * *fumes*." (Emphasis added.)  This argument, however, proves too much.  Were we to adopt TIG's interpretation, under the language of this exclusion any "chemical," or indeed, any "material to be recycled," that could "irritate" person or property would be a "pollutant."  We are reluctant to adopt an interpretation that would infinitely enlarge the scope of the term "pollutants," and seemingly contradict both a "common speech" understanding of the relevant terms and the reasonable expectations of a business person.
>
> Nor can the word "fumes" be isolated from its context in the endorsement.  Even if the paint or solvent fumes are within the definition of "pollutant," the exclusion applies only if the underlying injury is caused by "discharge, dispersal, seepage, migration, release or escape" of the fumes.  It cannot be said that this language unambiguously applies to ordinary paint or solvent fumes that drifted a short distance from the area of the insured's intended use and allegedly caused inhalation injuries to a bystander.

Id.  Without the benefit of existing South Carolina law, this analysis seems to be the most common-sense-based approach to the issue before the court.  If the "absolute pollution exclusion" is subject to more than one reasonable interpretation, the exclusion creates an ambiguity, and South Carolina law requires that such ambiguities be "construed liberally in favor of the insured and strictly against the insurer."  USAA Property, 661 S.E.2d at 797 (internal citation omitted).

## IV.  CONCLUSION

For the foregoing reasons, the court **DENIES** plaintiff's motion for summary judgment and **GRANTS** defendants' motions for summary judgment.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**January 12, 2010**
**Charleston, South Carolina**